F I L E D

JAN 3 0 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY DENENG,<br><br>       Petitioner,<br><br>   v.<br><br>TIM VIRGA, Warden,<br><br>       Respondent. | No. C 12-02332 BLF (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] The Court stayed the case to allow Petitioner to exhaust all of his claims. After Petitioner did so, the Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and denies the petition.

**PROCEDURAL HISTORY**

In 2009, a jury in Alameda County Superior Court, found Petitioner guilty of two counts of second-degree murder and two counts of second-degree attempted murder. The

---

[1] This matter was reassigned to this Court on April 17, 2014.

Order Denying Petition for Writ of Habeas Corpus; Denying COA
C:\Users\BLF\AppData\Local\Temp\notes8317B7\02332Deneng_deny_HC.wpd

jury also found true special allegations for the use of a gun, the discharge of a gun, and, on one of the counts of attempted murder, infliction of great bodily injury. On November 11, 2009, the trial court sentenced him to a term of 105 years plus 34 years in state prison.

Petitioner filed a direct appeal to the California Court of Appeal, which affirmed the conviction and judgment in 2010. In 2011, the California Supreme Court denied a petition for direct review and a habeas petition filed by counsel. Petitioner then filed a pro se petition for a writ of habeas corpus in the state superior court, and while that petition was pending he filed the instant federal petition. After this case was stayed, the state superior court denied the petition, and subsequent pro se habeas petitions to the state appellate and supreme courts were also denied. The stay of this case was then lifted.

## BACKGROUND[2]

> On the night of December 22, 2006, appellant met his sister and brother-in-law and two other friends at the Lucky Star Lounge in San Leandro. A birthday party was being held in the bar and it was very crowded inside. Appellant had several shots of cognac and appeared to be drunk.
> Manuel Nahsonhoya and his friend Raymond Dazhan were also drinking at the bar. Dazhan thought he heard appellant say something disparaging about Nahsonhoya while they were smoking outside. Nahsonhoya, who was much larger than appellant and had been drinking to the point that he felt "buzzed," confronted appellant about talking "shit" about him. An argument began between Nahsonhoya and Dazhan on the one hand,[3] and appellant and his friends on the other. Both sides were yelling and cursing.
> Someone in Nahsonhoya's group pushed appellant to the ground. Nahsonhoya held a broken beer bottle in each hand, gesturing toward the other group. The bartender came outside with her boyfriend and tried to calm everyone down. She told appellant that he should leave and his group started walking toward their cars. Nahsonhoya called someone a bitch, which seemed to make appellant even more upset.
> Appellant's brother-in-law Youeth Pek decided to drive appellant home because appellant was too drunk to get behind the wheel. When

---

[2] The facts of this case are taken from the California Court of Appeal opinion in *People v. Deneng*, No. A126867 (Cal. App. 1 Dist. Mar. 22, 2011). (Ans. Ex. 3 and Pet. Ex. 1 ("Op").)

[3] Some witnesses claimed that at least one other person was involved in the altercation along with Nahsonhoya and Dazhan, but Nahsonhoya and Dazhan testified that they did not know such a person.

they reached the car, Pek sat in the driver's seat but appellant refused to get in. Appellant paced for a few minutes and then walked toward the front of the bar, saying he would be right back. Shortly afterward, Pek heard gunshots.

About 15 people were standing outside the front of the bar when appellant returned and began shooting with a semi-automatic handgun. Ruby Vega, who had been talking to Nahsonhoya that evening, was shot in the head and fatally wounded. Daniel Camarillo, who had been attending the birthday party at the bar, was shot in the chest and died of his wound. Several others were wounded but survived: Nahsonhoya was shot in the upper left thigh; Raymond Jacquez was shot in the leg; William Tril was shot in the torso and arm; Calvin Le was shot in the thigh; and Keith Asazawa was shot in the thigh. According to Alex Law, who had come to the bar to meet his friend Asazawa and others, appellant was the shooter.

Appellant stopped shooting when his gun jammed. Dazhan went over and grabbed him, calling to Nahsonhoya for help. Nahsonhoya, who was still able to walk despite his gunshot wound, went to assist Dazhan and together they knocked appellant to the ground in the middle of road. They beat appellant until he was unconscious, with Nahsonhoya using a broken bottle to stab and slash him. They ran away because they feared they would be arrested for the beating.

When police arrived they found appellant lying unconscious and bloody in the road. A semiautomatic handgun that had jammed was also found in the road.

Appellant was charged with two counts of first degree murder and six counts of attempted murder with premeditation, along with enhancement allegations based on the use of a firearm and the infliction of great bodily injury. Ruby Vega and Daniel Camarillo were the named victims in the murder counts; Dazhan, Nahsonhoya, Jacquez, Tril, Le and Asazawa were the named victims in the attempted murder counts. During the jury trial on the charges, the defense position was that appellant had acted in a heat of passion, having been provoked during the confrontation with Nahsonhoya and Dazhan. Defense counsel urged the jury to convict appellant of two counts of voluntary manslaughter and six counts of attempted voluntary manslaughter rather than murder and attempted murder as charged.

The jury convicted appellant of the second degree murder of Vega and Camarillo and the attempted murder without premeditation of Dazhan and Nahsonhoya, and found true the enhancement allegations attached to those counts. (Pen.Code, §§ 187, 664/187, 12022.53, subds.(b)-(d), 12022.7, subd. (a).) It acquitted him of the four other attempted murder counts.

(Op. at 2-4) (footnote renumbered from original).

## DISCUSSION

A. **Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. *See Ylst*, 501 U.S. at 805. The parties have not provided a copy of a reasoned opinion on the first two claims by the California Supreme Court, and the record appears to indicate that it was a summary denial. Thus, the last reasoned opinion on the first two claims is the California Court of Appeal's opinoin on direct review. (Ans. Ex. 3.) The state superior court's order denying Petitioner's habeas petition is the last (and only) reasoned opinion on the third, fourth and fifth claims. (Pet.'s Notice of Exhaustion (Dkt. No. 8) at 5-11.)

The Supreme Court has affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. *See Harrington v. Richter*, 131 S. Ct. 770, 783-85 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Id.* at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

B.  **Legal Claims and Analysis**

Petitioner raises five claims as grounds for federal habeas relief: (1) he did not receive effective assistance of trial counsel because counsel's failure to object to the admission of Alex Law's preliminary hearing testimony did not preserve that issue for appeal; (2) he did not receive effective assistance of trial counsel because counsel failed to object to testimony describing him in jail clothes at the preliminary hearing; (3) trial court statements to the jury about intoxication evidence violated his right to due process; (4) appellate counsel was ineffective in failing to appeal the trial court's statements about intoxication evidence; (5) trial counsel was ineffective because he did not "fully articulate the legal underpinnings" of the claim that the intoxication instructions were inadequate (Pet. at 28).

1.  **Ineffective Assistance of Trial Counsel**

In order to prevail on a claim that trial counsel was ineffective in violation of the Sixth Amendment, a petitioner must show: first, that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Second, he must affirmatively establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Id.* Where, as here, the petitioner is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) (quoting *Strickland*, 466 U.S. at 694).

### a.  Failure to Object to Admission of Law's Preliminary Hearing Testimony

Petitioner's first claim is that trial counsel did not preserve for appeal by a timely objection on the record the issue of whether admission of Alex Law's preliminary hearing testimony violated the federal Confrontation Clause. (Pet. at 8-10.) The Court of Appeal provided the following relevant background to the admission of Law's preliminary hearing testimony:

> On the day before the first trial witness was called, and after the motions in limine were concluded, the prosecutor informed the court that he had spoken to Law's father the day before and to his sister approximately a week ago. Both said that Law had traveled to China to stay with a grandparent who was dying, that he intended to spend as much time there as possible while the grandparent was still alive, and that they did not know when he would return. The prosecutor said he did not believe there was any way to bring Law to court in time for trial and he asked to introduce his preliminary hearing testimony instead. The court noted that a finding of unavailability was constitutionally required before such testimony could be admitted and asked defense counsel whether an evidentiary hearing was necessary. Defense counsel responded, "No, I'll accept [the prosecutor's] representation," and stated that he would "submit the issue today" based on the prosecutor's offer of proof. Counsel acknowledged that he had been appellant's defense attorney at the preliminary hearing and that he had "cross-examined Mr. Law fully." Base[d] on this exchange, the court ruled that Law's testimony at the preliminary hearing was admissible.

(Op. at 4-5.) The California Court of Appeal found that defense counsel had failed to timely object to the admission of Law's preliminary hearing testimony and therefore had not preserved for appeal any claim that admission of such testimony was in error. (*Id.* at 4-6.) The Court of Appeal also went on to rule that even if counsel had objected and preserved the claim for appeal, any error in admitting the testimony was harmless beyond a reasonable doubt. (*Id.* at 6-8.)

In deciding whether an asserted deficiency in counsel's performance violates the Sixth Amendment, a court need not determine whether counsel's performance was deficient before examining whether the prejudice suffered by the defendant as the result of the alleged deficiencies satisfies the Sixth Amendment standard. *Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding

district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice).

Petitioner cannot show that counsel's failure to object to the admission of Law's testimony so as to preserve the claim for appeal was prejudicial under *Strickland*. Petitioner argues that there was prejudice because if counsel had objected, the prosecution would not have been able to show diligence in trying to secure Law for trial, which was necessary to establish Law's unavailability and admit his preliminary hearing testimony. (Pet. at 8-10.) He contends that excluding Law's testimony would have, in turn, led to a better result at trial. (*Id.*) Even assuming that the trial court would have sustained the objection and excluded Law's preliminary hearing testimony, there is no reasonable probability that this would have led to a better result at trial so as to render its admission prejudicial under *Strickland*.

The California Court of Appeal explained the effect of excluding Law's preliminary hearing testimony when it found that any error in admitting the testimony was harmless beyond a reasonable doubt:[4]

> [Law's] testimony can be summarized as follows: Law went to the Lucky Star Lounge with a group of friends and saw a confrontation take place outside between three "Mexican guys" and an "Asian guy." One of the "Mexican guys" wore his hair in a ponytail and was carrying a beer bottle. Law identified appellant in court as the "Asian guy." A man dressed in an Oakland A's jacket pushed appellant to the ground. The bartender, who was dating one of Law's friends, tried to break up the argument and asked appellant to leave. The two groups moved toward the parking lot and the "Mexican" group returned to stand on the sidewalk in front of the bar. Law testified that he heard a female voice scream and appellant came running toward them, firing several shots from a gun.
> Appellant complains that the admission of this testimony was prejudicial because Law was the only witness to directly identify appellant in court as the shooter. But defense counsel's strategy at trial was to admit that appellant was the shooter and try to convince the jury that the crimes he committed were voluntary manslaughter and attempted voluntary manslaughter. Appellant argues that his trial strategy might have been different if Law's preliminary hearing testimony had been excluded, but this is pure speculation in light of the overwhelming evidence that appellant was

---

[4]The Court notes that the California Court of Appeal applied the correct standard in assessing the harmlessness of any Confrontation Clause violation on direct review. *See United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (on direct review, Confrontation Clause violations are subject to harmless beyond a reasonable doubt standard).

> the person who fired the shots: the testimony by several witnesses about appellant's altercation with Nahsonhoya and Dazhan, which included appellant's being pushed to the ground; the testimony by appellant's brother-in-law that appellant would not get into the car to leave and instead went back toward the bar shortly before shots were fired; Nahsonhoya's and Dazhan's testimony that the man they beat and left lying unconscious (appellant) was the shooter; and the discovery of the murder weapon in the street where appellant was found lying unconscious. Given the strong evidence of identification, Law's testimony was actually beneficial to the defense to the extent it tended to show the shooting was the result of provocation rather than premeditation.
>     Appellant contends that Law's testimony was prejudicial because it made the jury less likely to accept his theory that he acted in the heat of passion and that his crimes were no greater than voluntary manslaughter and attempted voluntary manslaughter. We disagree. Law testified about the altercation that led to the shooting, and he did not describe it as somehow less "provocative" when compared to the testimony of other witnesses. The jury simply did not accept the theory that appellant reacted in the manner of an ordinarily reasonable person under the given facts and circumstances, as is required for a conviction of voluntary manslaughter under a heat-of-passion theory. "[N]o defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1252-1253.)

(Op. at 6-8.)

For the same reasons that the California Court of Appeal found the admission of Law's testimony harmless beyond a reasonable doubt, this Court finds that any failure by counsel to object to the testimony was not prejudicial under the *Strickland*. Petitioner did not deny being the shooter, nor could he have done so successfully even if Law's testimony were not admitted in light of the "overwhelming evidence" that Petitioner fired the shots:

> the testimony by several witnesses about appellant's altercation with Nahsonhoya and Dazhan, which included appellant's being pushed to the ground; the testimony by appellant's brother-in-law that appellant would not get into the car to leave and instead went back toward the bar shortly before shots were fired; Nahsonhoya's and Dazhan's testimony that the man they beat and left lying unconscious (appellant) was the shooter; and the discovery of the murder weapon in the street where appellant was found lying unconscious.

(Op. at 7.)

Petitioner argues that Law's testimony was prejudicial because it was used to counter his defense that he had been provoked. (Pet. at 11-12.) Law was one of nine

eyewitnesses to the altercation whose testimony the prosecutor relied on in closing argument to argue against provocation (RT[5] at 757-74), including Calvin Le, whom the prosecutor described as "one of the best" and "the best" witness (*id.* at 760-64), Nahsonhoya (*id.* at 765-68), Corina Ornelas (*id.* at 757-58), Alexandra Anderson (*id.* at 758-60), and Petitioner's brother in law (RT 765, 782). Law's testimony was cumulative of the testimony of other witnesses, who also testified about the initial argument and push, and about Petitioner leaving with his associates and then returning to shoot the gun into the crowd multiple times. As the Court of Appeal correctly observed, Law's testimony did not describe the prior fight as less provocative than the testimony of the other more important witnesses. (Op. at 8.) More importantly, the provocation defense was not credible in this case, with or without Law's testimony. To find provocation, the jury would have had to find that a reasonable person would have been provoked into such a reaction by the prior fight with Nahsonhoya and Dazhan in which insults were exchanged and Petitioner was pushed to the ground. *See People v. Steele,* 27 Cal.4th 1230, 1252-53 (2002) (holding that in order to find provocation or heat of passion, jury must find circumstances that would arouse passions of reasonable person, not necessarily of defendant). A jury was very unlikely to conclude that a brief exchange of insults and being pushed to the ground would provoke an ordinary person to return to the scene and shoot ten bullets into a crowd of people. Excluding the testimony by one of many witnesses to the altercation, who did not describe the pre-shooting events between Petitioner and the others as particularly provocative, is extremely unlikely to have convinced the jury otherwise.

Petitioner argues that prejudice can be gleaned from the fact that the jury asked questions about voluntary manslaughter and acquitted him on four of the counts of attempted murder. (Pet. at 12; RT at 865-67.) Neither of these facts shows prejudice from Law's testimony. The jury's questions did not reference Law or any aspect of his

---

[5]"RT" refers to the Reporter's Transcript, submitted as Exhibit 2 to the Answer.

testimony, and they indicated that it was evidence of Petitioner's voluntary intoxication, not Law's testimony, that had caused them to debate voluntary manslaughter. (*Id.*) The fact that they acquitted him on certain counts tends to undermine any notion that they had found him provoked, which would have led to a conviction for voluntary manslaughter not an outright acquittal.

For these reasons, there is no reasonable probability that but for counsel's failure to object to the admission of Law's preliminary hearing testimony, Petitioner would have obtained a better result. This Court's independent review of the record shows that the state court's denial of this claim was not objectively unreasonable and therefore Petitioner is not entitled to federal habeas relief.

### b. Jail Clothing

Petitioner claims that counsel was ineffective in failing to object when, during the reading of Law's preliminary hearing testimony, there were references to the fact that Petitioner, who was in custody at the time, was wearing jail clothing. Law referred to Petitioner as the person "wearing the yellow outfit," and later the "guy in the yellow jumpsuit," and the magistrate judge clarified that this referred to Petitioner "who's wearing a yellow Santa Rita Jail top at counsel table." (RT at 285, 292, 295.) Petitioner argues that the prosecutor should have objected because the jury would have inferred that he had been held in custody for the two years since the preliminary hearing. (Pet. at 13-14.)

The California Court of Appeal rejected the claim under *Strickland* based on the following reasoning:

> Appellant has not established that he was prejudiced by the brief references to his jail clothing during the preliminary hearing. A defendant may not be compelled to stand trial before a jury while dressed in identifiable jail clothing because "[j]urors may speculate that the accused's pretrial incarceration, although often the result of his inability to raise bail, is explained by the fact he poses a danger to the community or has a prior criminal record." (*Estelle v. Williams* (1976) 425 U.S. 501, 518, dissenting opn. of Brennan, J.; *see also People v. Taylor* (1982) 31 Cal.3d 488, 494; *People v. Pena* (1992) 7 Cal.App.4th 1294, 1304; *People v. Meredith* (2009) 174 Cal.App.4th 1257, 1262-1263.) Appellant wore civilian clothing at his trial, and contrary to his suggestion, there is no reason the jury would

> have inferred that he remained in custody as opposed to having been released on bail.
>
> Moreover, the defense strategy at trial was to admit that appellant was the shooter, and to argue that the crimes were voluntary manslaughter and attempted voluntary manslaughter based on a heat of passion/provocation theory. Because the jury knew appellant was admittedly guilty of some type of homicide offense, information that he had been in custody at the outset of the case would be neither surprising nor particularly prejudicial. Isolated comments that a defendant is in custody "simply [do] not create the potential for the impairment of the presumption of innocence that might arise were such information repeatedly conveyed to the jury." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1336.) It is not reasonably probable the jury would have reached a more favorable verdict had those brief references to his jail clothing been omitted from the transcript that was read.
>
> Finally, we note that appellant was originally charged with two counts of first degree murder and six counts of attempted murder with premeditation, but was convicted of two counts of second degree murder and only two counts of attempted murder without premeditation. This strongly suggests that the jury considered the evidence dispassionately and was not influenced by appellant's custody status at the time of the preliminary hearing.

(Op. at 9-10.)

The California Court of Appeal's decision is reasonable. Petitioner wore civilian clothing at trial, and the jury knew that the preliminary hearing had taken place almost two years earlier. (Pet. at 13.) There is no reason to suspect that the jury would have assumed that he remained in custody for that entire time, as opposed to having been released on bail. Moreover, as Petitioner was both accused of and admitted to shooting number of people and killing two of them, it is unlikely that any additional stigma attached from the fact that he had been in jail at one point in time. Petitioner also argues that his acquittal on four of the counts, the jury's choice of second-degree murder instead of first-degree murder, and the jury's questions about voluntary manslaughter instruction establish that this was a close case. (Pet. at 14.) However, as the Court of Appeal correctly noted, these facts also indicate that the jury was basing its decision on consideration of the evidence particular to each count and not on the fact that he had been in custody nearly two years earlier.

There is no reasonable likelihood of a different outcome at trial if counsel had objected to the references to jail clothing in the preliminary hearing testimony.

Accordingly, Petitioner is not entitled to relief on this claim because the state appellate court's determination he was not prejudiced by counsel's failure to object was objectively reasonable.

### 2. Trial Court's Response to Jury Questions

Petitioner's third claim is that the trial court violated his constitutional rights by responding to the jury's question about evidence of Petitioner's intoxication in a way that mischaracterized state law. Petitioner's fourth and fifth claims are related to this claim. In his fourth claim he asserts that appellate counsel was ineffective in failing to raise this claim, which he characterizes as an "obvious winner," on appeal. (Pet. at 25-28.) His fifth claim asserts that trial counsel did not do a good job supporting his objection to the trial court's response. (*Id.* at 28-29.) These claims fail because they are premised upon an interpretation of state law rejected by the state court, and this Court is bound by the state court's determination of state law.

During deliberations, the jury asked, "Can we consider intoxication with respect to heat of passion?" (RT at 866.) The jury was referencing the instructions on voluntary manslaughter and voluntary intoxication, which read, in relevant part:

570 Voluntary Manslaughter – Lesser Included Offense

A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion. The defendant killed someone because of a sudden quarrel or in the heat of passion if:
  1. The defendant was provoked;
  2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; and
  3. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.
Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.

In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.

> It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. In deciding whether the provocation was sufficient, <u>consider whether an ordinary person of average disposition, in the same situation and knowing the same fact, would have reacted from passion rather than from judgment.</u>
>
> ...
>
> 625. Voluntary Intoxication.
>
> You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or whether the defendant acted with deliberation and premeditation.
>
> A person is voluntarily intoxicated if he becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect.
>
> You may not consider evidence of voluntary intoxication for any other purpose.

(CT[6] at 528-29, 537) (emphasis added).

> On the second day of deliberations, the jury asked the following question:
>
> The jury instructions state that "You may consider [evidence of intoxication] only in deciding whether the defendant acted with an intent to kill, or whether the defendant acted with deliberation and premeditation . . . You may not consider evidence of voluntary intoxication for any [sic] purpose." (p.27)
>
> Also, "consider whether an ordinary person of average disposition would have been provoked and how such a person would react in the <u>same situation</u> knowing the <u>same facts.</u>"
>
> Intoxication is part of "the situation" and "the facts." It is also "another purpose." There appears to be a contradiction. Can we consider intoxication with regard to heat of passion?

(CT at 551) (emphasis in original). The trial court answered as follows:

> You zeroed in on exactly the instructions that I need to talk about in answering that, obviously, but I wanted to remind you of another instruction, which was much earlier where I told you that you must – you should consider all of these instructions in light of each other or together. Sometimes you have to look to another instruction to get some guidance. I'm going to start with the instruction on sufficiency of provocation. It does make reference to the same situation and knowing the same facts. And your confusion has to do with what's the scope of those terms.

---

[6] "CT" refers to the Clerk's Transcript, the relevant excerpts of which are submitted as Exhibits D and E to the Petition, while a complete transcript is submitted as Exhibit 1 to the Answer.

> The answer to that question lies in instruction – the instruction on voluntary intoxication. That instruction tells you that you may consider that evidence only in certain ways. You can consider it only as it relates to whether the defendant acted with an intent to kill. You can consider it on the question whether he acted with premeditation. The last sentence of that instruction is your answer, and it reads, you may not consider evidence of voluntary intoxication for any other purpose.

(RT at 866.)

Petitioner claims that the trial court's response to the jury's questions misrepresented California law on voluntary manslaughter. He argues that California law permits the jury to consider evidence of voluntary intoxication in applying the objective standard for voluntary manslaughter — whether an "ordinary" person in the same circumstances would have been provoked to act in the heat of passion. (*Id.* at 19-22.) According to Petitioner, under state law the jury could find him guilty of voluntary manslaughter if an ordinary person as intoxicated as the evidence showed Petitioner to be would have been provoked into shooting the victims. (*Id.* at 22.) He contends that the trial court erred by responding to the jury's question by telling them not to consider voluntary intoxication in applying the voluntary manslaughter instruction, and that this was "tantamount to foreclosing verdicts of voluntary manslaughter and attempted voluntary manslaughter." (*Id.* at 23.)

The Alameda County Superior Court rejected Petitioner's interpretation of California law.[7] After finding the claims in his habeas petition (claims three through five of the instant petition) untimely and unexhausted, the state court went on to reject them on their merits. (Notice of Exhaustion (docket number 17) at 9-11). First, the state court found that the trial court's response to the jury's question simply referred them to the instructions and did not, as Petitioner contends, tell them not to consider the voluntary intoxication evidence for voluntary manslaughter. (*Id.* at 10.) More importantly, however, the state court determined that even if the trial court had told the jury not to

---

[7]As noted above, the superior court's opinion denying Petitioner's state habeas petition is the pertinent state court opinion in reviewing his third, fourth and fifth claims because the superior court was the last (and only) state court to give a reasoned denial of these claims. (Notice of Exhaustion at 5-11.)

consider voluntary intoxication for that purpose, this was a correct statement of state law because voluntary intoxication is "incompatible" with the objective standard of voluntary manslaughter. (*Id.* (citing Cal. Pen. Code § 22(b)[8], *People v. Saille*, 54 Cal.3d 1103, 1111-12 (1991), *People v. Castillo*, 16 Cal.4th 1009, 1013-14 (1997), *People v. Lucas*, 55 Cal. App. 4th 721, 739-40 (1997), and also *People v. Cole*, 33 Cal.4th 1158, 1211, 1215-16 (2004)). The state court characterized Petitioner's contrary interpretation of state law as an invocation of a diminished capacity defense that was rejected by the California Legislature. (*Id.*)

Petitioner's claim that the trial court's response was unconstitutional is cognizable insofar as errors in instructing the jury violate due process if they so infected the trial that the resulting conviction is fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Moreover, due process entitles defendants to adequate instructions on their defense theory to protect their right to present a complete defense, *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000), and prohibits instructions that lessen the prosecution's burden of proving every element of an offense true beyond a reasonable doubt, *see Yates v. Evatt*, 500 U.S. 391, 400-03 (1991).

However, Petitioner's claim fails because it is premised upon an interpretation of state law rejected by the state court, which is binding here. A state court's interpretation of state law, including one announced on review the challenged conviction, binds a federal court sitting in habeas corpus. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). The state's highest court is the final authority on the law of that state, *Sandstrom v. Montana*, 442 U.S. 510, 516-17 (1979), but determinations of state law made by a lower state court must also be followed by the federal court conducting federal habeas review. *Hicks*, 485 U.S. at 630 n.3. Here, accepting as true the state court's explanation that under state law evidence of Petitioner's voluntary intoxication is not compatible with the objective standard of voluntary

---

[8]Renumbered in 2012 to Cal. Pen. Code § 29.4.

manslaughter on a provocation theory, there is no error in the trial court's response to the jury's questions.

In limited circumstances, a lower state court's determination of state law is not binding on federal habeas review "if other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237-38 (1940)). *See, e.g., Briceno v. Scribner*, 555 F.3d 1069, 1079-82 (9th Cir. 2009) (federal court was not bound by state court of appeal's interpretation of gang enhancement statute that was contrary to an earlier federal circuit panel decision regarding same statute where state supreme court had not yet addressed a view on the subject but whose most recent pronouncement was consistent with earlier federal circuit panel's view of statute's requirements). Petitioner has not provided "persuasive data" or indeed any data that the California Supreme Court would interpret state law differently than did the superior court. He cites no court decisions, state or federal, that provide that voluntary intoxication evidence can be used to show voluntary manslaughter on a provocation theory. (Pet. at 19-22.) The only cases he cites show the evolution of state law culminating in passage of Cal. Pen. Code § 29.4 (formerly Cal. Pen. Code § 22), which limits consideration of voluntary intoxication to the issue of whether or not the defendant "actually formed" a specific intent, deliberated, premeditated, or had express malice, and if anything supports the superior court's decision that voluntary intoxication cannot be used to find voluntary manslaughter on the basis of provocation. *See also* CALCRIM 625 (voluntary intoxication cannot be considered "for any other purpose"); *People v. Cole*, 33 Cal.4th 1158, 1211 (2004) (the concepts of provocation and specific intent "are distinct"). Indeed, the superior court's decision is consistent with the California Supreme Court's explanation that under the objective standard of voluntary manslaughter on the basis of provocation or heat of passion, "no defendant may set up his own standard of conduct." *People v. Steele*, 27 Cal. 4th 1230, 1252-53 (2002).

A federal court also may re-examine a state court's interpretation of its law if that interpretation appears to be an obvious subterfuge to evade consideration of a federal

issue. *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975); *see Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) (habeas petitioner might have been able to show that state supreme court's interpretation and application of state law was constitutional error if it constituted "a fundamental defect which inherently resulted in a complete miscarriage of justice," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent"). Petitioner does not attempt to make either showing here. He cites no fundamental defect or miscarriage of justice that arises from not allowing voluntary intoxication to be used to establish voluntary manslaughter, *see Montana v. Egelhoff*, 518 U.S. 37, 39-40, 43-48, 51-52, 56 (1996) (right to have a jury consider intoxication evidence is not a "fundamental principle of justice") (plurality op.); *see also id.* at 58 (Ginsburg, J., concurring), nor are there any exceptional circumstances cited by Petitioner or apparent from the record necessitating federal habeas relief.

  Accordingly, this Court is bound to accept the state court's determination that California law prohibits the jury from considering voluntary intoxication evidence to decide whether Petitioner met the objective standard for voluntary manslaughter on a provocation theory. The trial court did not misstate California law so as to violate his due process right to a fair trial, his right to present the defense of provocation as that defense is defined by state law, or his right to have the prosecution carry its burden to prove the elements of the charged offenses true beyond a reasonable doubt. Accordingly, the state court's denial of the third claim in the instant petition was not objectively unreasonable, and Petitioner is not entitled to federal habeas relief on this claim.

  As noted above, Petitioner's fourth and fifth claims are related to the third claim insofar as he argues that appellate and trial counsel did not adequately challenge the trial court's response to the jury's question. Both claims of ineffective counsel require Petitioner to show a reasonable probability that such a challenge would have succeeded. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (claim of ineffective assistance of appellate counsel requires showing that counsel failed to present a merit-worthy issue on appeal and that petitioner would have prevailed on appeal); *Strickland*, 466 U.S. at

687–88 (to establish ineffective assistance of trial counsel, petitioner must show reasonable probability of different result but for counsel's errors). Under the state court's construction of state law on voluntary intoxication and voluntary manslaughter, which is binding on this Court, the trial court's response to the jury's question correctly stated California law. Therefore, there is no reasonable chance that counsel would have succeeded in pursuing a challenge to that response either at trial or on appeal, and the state court's denial of these claims was not objectively unreasonable. Accordingly, Petitioner is not entitled to habeas relief on his fourth or fifth claims.

## CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus is **DENIED**.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is **DENIED**.

The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: January 30, 2015

BETH LABSON FREEMAN
United States District Judge